FILED
2022 Sep-26  PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JERI SELLERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:20-cv-01748-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Jeri Sellers, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Sellers timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded for further proceedings.

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I.  Background Facts and Procedural History

Sellers was about 50 years old when she first applied for DIB in 2016. (Tr. at 30). She has a high school education and past work experience as a retail sales manager. (Tr. at 30). In 2012, Sellers stopped working to care for her mother full-time until her mother's death in 2015. (Tr. at 944). In December 2016, Sellers had a pulmonary blood clot, and she was ultimately diagnosed with lupus anticoagulant in June 2017. (Tr. at 945).

Sellers applied for disability benefits in September 2016, alleging she became unable to work on September 11, 2015. (Tr. at 249-50). She claimed to suffer from chronic migraines, major depressive disorder, mitrovalve prolapse with regurgitations, "divertialitic," insomnia, and degenerative disc disease. (Tr. at 298). Her application was denied on initial review, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. at 122, 937-56). The day before the August 2018 hearing, Sellers amended her onset date to June 6, 2017. (Tr. at 370).

In November 2018, the ALJ issued a decision in which he concluded Sellers was not disabled between June 2017 and September 2017, her date last insured. (Tr. 97-114). The Appeals Council granted Sellers's request for review, vacated the ALJ's decision, and remanded it for further evaluation of Sellers's mental impairments, certain medical opinions, and her residual functional capacity ("RFC"). (Tr. at 116-118).

2

The ALJ held another hearing in April 2020. (Tr. at 958-89). On May 13, 2020, the ALJ issued a second decision, again concluding Sellers was not disabled between September 11, 2015, through September 30, 2017, her date last insured.[3] (Tr. at 18-37). The Appeals Council denied review of the ALJ's decision (Tr. at 1-6), and that decision became the final decision of the Commissioner. *See Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Sellers filed this action. (Doc. 1).

## II.    Statutory and Regulatory Framework, and the ALJ's Evaluation

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to

---

[3] It is unclear why the ALJ used September 11, 2015, as the alleged onset date instead of the amended onset date of June 6, 2017, in the second decision.

determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ found Sellers met the SSA's insured status requirements through September 30, 2017. (Tr. at 21). He further determined Sellers did not engage in substantial gainful activity following the alleged onset date of September 11, 2015. (Tr. at 21).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Sellers had the following severe impairments through her date last insured: cervical and lumbar radiculopathy; peripheral edema; lupus anticoagulant syndrome; mitral valve prolapse; chronic pulmonary embolism; depression; and long-term opiate use. (Tr.

4

at 21). The ALJ also found Sellers's migraine headaches were a nonsevere impairment. (Tr. at 21).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Sellers's impairments did not meet or medically equal the severity of one of the Listings. (Tr. at 23).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's RFC before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

If the claimant is not capable of performing her past relevant work, the Commissioner will determine whether the claimant can perform other work that exists in substantial numbers in the national economy in light of the claimant's RFC,

age, education, and work experience. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant can perform other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1).

Before proceeding to the fourth step, the ALJ found Sellers's medically determinable impairments ("MDI") could reasonably be expected to cause her alleged symptoms but her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 28). The ALJ determined Sellers had the following RFC through her date last insured:

> [t]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can frequently kneel, crouch, or crawl. She can occasionally be exposed to weather or humidity, extreme cold, extreme heat. She can never be exposed to workplace hazards such as moving mechanical parts and high, exposed places. She is limited to simple and routine tasks, but not at a production rate pace. She has the ability to make simple work-related decisions, and can tolerate occasional changes in the work setting.

(Tr. at 25).

At the fourth step, the ALJ concluded Sellers was unable to perform past relevant work. (Tr. at 30). Proceeding to the final step, the ALJ found Sellers was an individual closely approaching advanced age on her date last insured, with at least a

high school education and the ability to communicate in English. (Tr. at 30).

Transferability of job skills was not material to the disability determination because

the Medical-Vocational rules supported a finding that Sellers was not disabled,

whether or not she had transferable job skills. (Tr. at 30). Relying on testimony from

a vocational expert, the ALJ determined Sellers was, through her date last insured,

capable of successfully adjusting to other work that existed in significant numbers

in the national economy for an individual with her age, education, work experience,

and RFC. (Tr. at 31). Based on this evidence, the ALJ ultimately concluded Sellers

was not disabled at any time between September 11, 2015, and September 30, 2017,

and therefore was not entitled to benefits. (Tr. at 31).

## III.    Standard of Review

A court's role in reviewing claims brought under the Social Security Act is

narrow. Its review is limited to determining (1) whether there is substantial evidence

in the record as a whole to support the findings of the Commissioner and (2) whether

the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F.

App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the

Commissioner, provided those findings are supported by substantial evidence, but

closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400

(11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de*

*novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## IV.   Analysis

Sellers challenges the ALJ's decision on two substantive grounds: (1) the ALJ should have found her migraine headaches were a severe impairment and (2) the ALJ should have accorded more weight to the opinions of two treating physicians, Dr. John Foster and Dr. Joanne Rossman. She also argues the SSA Commissioner's for-cause removal protection, *see* 42 U.S.C. § 902(a)(3), violates separation-of-powers principles and requires remand of her case. (Doc. 21 at 8). Because the ALJ's opinion is due to be reversed and remanded on other grounds, the court declines to address this argument; however, many courts, including those in the Northern District of Alabama, have rejected this argument. *See, e.g., Fleagle v. Kijakazi*, No. 2:21-CV-00357-AKK, 2022 WL 2873395 (N.D. Ala. July 21, 2022); *Smith v. Kijakazi*, No. 7:21-CV-00059-AKK, 2022 WL 1063640 (N.D. Ala. Apr. 8, 2022).[4]

---

[4] *See also Rives v. Comm'r of Soc. Sec.*, No. 1:20-CV-2549-CAB, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Benavidez v. Kijakazi*, No. CV 1:20-0990-SCY, 2021 WL 6062715 (D.N.M. Dec. 22, 2021); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* No. 2:20-CV-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022).

### A.   Migraine Headaches

In his first decision from November 2018, the ALJ found Sellers's migraines were a severe impairment, but he did not include any limitations related to migraines in assessing her RFC. (Tr. at 102). In its remand order, the Appeals Council instructed the ALJ to reconcile this discrepancy. (Tr. at 116). It also instructed the ALJ to consider Social Security Ruling 19-4p, effective August 16, 2019, which provides guidance for evaluating primary headache disorders. (Tr. at 117).

Sellers complains that on remand the ALJ instead found her migraines were not a severe impairment and did not properly evaluate her migraines under SSR 19-4. In response, the Commissioner argues the ALJ found Sellers's migraines were an impairment but, based on the record, it was reasonable for him to conclude they did not significantly interfere with her ability to perform basic work requirements and were therefore not severe.

SSR 19-4 states the SSA "will not use a person's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of" an MDI. SSR 19-4p, 84 Fed. Reg. 44,667-01 (Aug. 26, 2019). Instead, the SSA considers the following combination of findings from an acceptable medical source ("AMS") to establish a primary headache disorder as an MDI:

- A primary headache disorder diagnosis from an acceptable medical source. The evidence must document that the AMS who made the diagnosis reviewed the person's medical history, conducted a physical examination, and made the diagnosis only after excluding alternative medical and

psychiatric causes of the person's symptoms. In addition, the treatment notes must be consistent with the diagnosis.

- An observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS.

- Remarkable or unremarkable findings on laboratory tests.

- Response to treatment. The adjudicator will consider whether a person's headache symptoms have improved, worsened, or remained stable despite treatment and consider medical opinions related to a person's physical strength and functional abilities. When evidence from an AMS documents ongoing headaches that persist despite treatment, such findings may constitute medical signs that help establish the presence of an MDI.

*Id.* at 44,670. Relevant to this case, an MDI is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a). Basic work activities include the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

Here, the ALJ found Sellers had been prescribed medication to treat headaches, but she not been treated specifically for migraines at most of her visits before her date last insured. (Tr. at 22). Most of those visits involved treatment for other conditions, such as lupus, urinary incontinence, cardiac issues, etc., and she was not referred to a specialist for her headaches. (Tr. at 22). The ALJ stated Dr. Rossman, one of Sellers's treating physicians, did not diagnose or treat Sellers for

migraines, and her exam notes frequently observe that, neurologically, Sellers was alert and oriented with normal speech, no motor defects, and no sensory defects. (Tr. at 22). Sellers was treated for migraines at Cahaba Pain and Spine Care, but at those visits she reported her medication "keeps her migraines in check." (Tr. at 22, 720). Ultimately, the ALJ concluded Sellers's headaches were an MDI but they "would not significantly interfere with [her] ability to perform basic work activities on a sustained basis; therefore, [they] are nonsevere." (Tr. at 22).

Sellers cites a visit to Dr. Thomas Martin at Cahaba Pain and Spine Care, arguing his note that Sellers "has trouble focusing, trouble remembering, appears to have some cognitive dysfunction" shows he witnessed one of Sellers's headache events with observable signs such as "problems concentrating or remembering" as SSR 19-4p requires. But the context of Dr. Martin's observation, at a visit where Sellers reported "no headache," undercuts this argument:

> Low back pain with radiation. Patient has had this pain for many years, per her report. She is an extremely difficult historian. She has trouble focusing, trouble remembering, appears to have some cognitive dysfunction. She reports an episode where she fell while looking at a gas meter and possibly struck her head. She went to the ER, had an evaluation. She believes this is around the time she started having the back pain.

(Tr. at 720). There is no indication Dr. Martin connected Sellers's perceived cognitive issues with a headache, particularly given she reported (1) no headache at this visit and (2) her medication "keeps her migraines in check." (Tr. at 720, 724).

11

His notes—dated August 28, 2017, and September 28, 2017—do state he would consider recommending discontinuation of Topamax because of Sellers's apparent cognitive issues. (Tr. at 720). However, the record reflects Sellers continued with Topamax, as she reported it as a daily medication during a January 2018 visit to Dr. Rasa Miller. (Tr. at 741). At that visit, Sellers also reported she stopped visiting Cahaba Pain Management because they questioned her about her psychiatric health. (Tr. at 737).

Sellers also asserts she complained in multiple exams of ongoing headaches despite taking medication. However, she does not cite to the record to support this claim. Further, whether she experienced headaches is not in question. The issue is whether her headaches were severe—did they interfere with her ability to perform basic work activities? Sellers fails to cite medical evidence that her migraines limited her ability to perform basic work activities. Similarly, her argument that the ALJ should have incorporated "the required functional limitations" into her RFC fails because she neither describes those "required" functional limitations or directs the court to evidence detailing those purported limitations.[5]

---

[5] Sellers later argues the ALJ should have given greater weight to Dr. Foster's opinion that she suffered from headaches that occur every 2-3 days and last 3-4 days. Sellers does not argue this opinion is evidence her migraines interfered with her ability to engage in basic work activities, but this opinion does include potential limitations on Sellers's capacity to work. Nonetheless, as discussed below, the ALJ did not err in discounting this opinion as unsupported and inconsistent.

Finally, in her reply brief, Sellers argues her complaints of severe headaches are consistent with the objective evidence, but she also asserts "observable signs of an active headache would reasonably be infrequent, given the necessity for the patient to be experiencing an active headache, yet still present to a clinical evaluation." (Doc. 25 at 31). If Sellers is claiming her migraines are frequent and debilitating enough to preclude her ability to work but not so frequent that a physician could observe a migraine event, this argument is unpersuasive because it is inherently contradictory. Also, SSR 19-4p requires primary headache disorders to "be established by objective medical evidence[,]" and a finding of disability will not be "based on a person's statement of symptoms alone." 84 Fed. Reg. 44,667-01. Sellers's criticism is directed at the standard of evaluation, not at the ALJ's application of that standard.

Sellers was diagnosed with and prescribed medication for migraines, but that fact does not render her disabled because symptoms alone do not determine a claimant's ability to perform work-related activities. "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *see also Bros. v. Saul*, No. CV 1:20-00042-N, 2021 WL 1186136, at *8 (S.D. Ala. Mar.

29, 2021) (mere fact that a physician treated claimant for migraines was not dispositive of the existence of a disabling impairment).

Because Sellers fails to point to record medical evidence showing her migraines significantly limited her ability to perform basic work activities, the ALJ did not err in finding her migraines were not severe. Even if the ALJ failed to identify all of Sellers's severe impairments, this error would be harmless. At step two of the disability evaluation test, the ALJ must determine if the claimant has any severe impairment, but he is not required to identify all the claimant's severe impairments. Step two is satisfied if the ALJ finds any severe impairment, "whether or not it results from a single severe impairment or a combination of impairments that qualifies as 'severe.'" *See Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). Thus, where an ALJ determines a claimant suffers from a severe impairment or combination of impairments that satisfies step two, the ALJ's failure to identify an additional severe impairment does not affect the ALJ's analysis under the subsequent steps of the test. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951– 52 (11th Cir. 2014).

### B.   Treating Physician Opinions

Sellers next contends the ALJ should have given greater weight to two treating source statements. Because her application was filed on September 1, 2016, before

the new regulations regarding the evaluation of medical source statements, the treating physician rule applies. That rule requires an ALJ to give substantial or considerable weight to a treating source's opinion absent good cause to discount it. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (internal quotations and citation omitted).

### 1.   Dr. Foster's Opinion

Dr. John Foster, Sellers's gynecologist, has treated her for at least 7 years, and he diagnosed her with migraines. (Tr. at 926). He submitted a March 9, 2020 medical source statement in which he reported Sellers suffers from "sporadic" headaches that occur every 2-3 days and last for 3-4 days. (Tr. at 926-31). According to Dr. Foster, when Sellers has a headache, she is precluded from performing basic work activities and needs a break from the workplace. (Tr. at 929). She requires unscheduled work breaks, at least twice a week, of 2-4 hours. (Tr. at 930). Sellers can perform a low stress job, but she would be absent from work about twice a month. (Tr. at 930).

The ALJ assigned little weight to Dr. Foster's opinion because it was neither related to his speciality nor supported by his treatment notes. (Tr. at 29). Sellers complains the ALJ did not consider Dr. Foster's full treatment history, citing visits

in 2013, 2014, 2015, 2016, 2018, and 2019. Sellers's argument is unpersuasive. First, most of these treatment notes relate to Sellers's mental state rather than her migraines. Second, the records that do discuss headaches simply demonstrate the presence or diagnosis of migraines—which the ALJ found was a non-severe impairment. Dr. Foster's notes do not reflect Sellers's migraines were frequent and lasted several days during her insured period. Accordingly, the ALJ did not err in discounting Dr. Foster's opinion as unsupported by and inconsistent with his own records.

### 2.   Dr. Rossman's Opinion

Dr. Rossman is a board-certified oncologist and hematologist who treated Sellers beginning in June 2017. She provided two opinions, dated August 2018 and March 2020:

- August 2018 opinion: Sellers's symptoms include dizziness, fatigue, and bruising, and she has musculoskeletal back pain unrelated to lupus anticoagulant. (Tr. at 763). She has a good prognosis if she takes her medication, which should not interfere with her work. (Tr. at 763-64). Sellers currently has no impairments. (Tr. at 764). Her pain is seldom severe enough to interfere with attention and concentration, and she is not limited in her ability to deal with work stress. (Tr. at 764). Sellers can sit for a total of 4 hours and stand/walk for a total of 4 hours in a workday. (Tr. 765). Sitting or standing for extended periods of time can cause more PTEs to form. (Tr. at 767). She does not need a job which permits shifting positions at will and will not require unscheduled breaks. (Tr. at 765). Sellers can frequently lift up to 20 pounds and occasionally lift up to 50 pounds. (Tr. at 766). Sellers will be absent less than once a month due to her impairments or treatments. (Tr. at 766-67).

- <u>March 2020 opinion</u>: Sellers's symptoms include severe fatigue, headache, joint pain, chest wall pain, back pain, dizziness, and bruising. (Tr. at 932). She has frequent headaches, joint pain, anterior chest wall pain and lower back pain. (Tr. at 932). Sellers's pain is frequently severe enough to interfere with attention and concentration, and she is severely limited in her ability to deal with work stress. (Tr. at 933-34). She can sit for a total of 2 hours and stand/walk for a total of 2 hours in a workday. (Tr. at 934). Sitting or standing for extended periods of time can cause more PTEs to form. (Tr. at 936). She must be able to take an unscheduled 15-minute break every 2 hours, and she requires a job that permits shifting positions at will from sitting, standing, or walking. (Tr. at 934). She can frequently lift up to 20 pounds and occasionally lift up to 50 pounds. (Tr. at 936). Sellers will be absent an average of three times a month because of her impairments. (Tr. at 935-36).

Both opinions state that June 29, 2017, is the earliest date the description of symptoms and limitations applies. The ALJ assigned "partial weight" to the August 2018 opinion, finding it was supported by Dr. Rossman's treatment notes and the objective medical evidence as a whole. (Tr. at 29). He gave "moderate weight" to the March 2020 opinion, noting it was significantly inconsistent both with her August 2018 opinion and her treatment of Sellers. (Tr. at 29). The ALJ described in detail the inconsistencies between the March 2020 opinion and the treatment notes, noting (1) a September 2017 MRI of the cervical and lumbar spines indicated only mild degenerative changes; (2) Sellers's pulmonary thromboembolism was being successfully treated with medication following a December 2016 hospitalization; (3) Sellers's physical examination was within normal limits and she was described as in no apparent distress; (4) her pain score remained unchanged at a level 4; and (5) there were no references to any reported limitations of activities. (Tr. at 29).

The ALJ adequately explained why he rejected the very restrictive March 2020 opinion as inconsistent. But his treatment of Dr. Rossman's August 2018 opinion is confusing. He concluded it was supported by Dr. Rossman's treatment records and consistent with the records as a whole, but he assigned the opinion only partial weight and did not incorporate its sitting and standing restrictions in the RFC or address these restrictions in the colloquy with the vocational expert. His opinion does not explain this discrepancy.

Further, the court cannot conclude this is harmless error. The RFC limits Sellers to "light work," the full range of which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10. Given Dr. Rossman's August 2018 limitations, it appears Sellers cannot perform the full range of light work. SSR 83-12 addresses this issue, acknowledging that in those disability claims where a person must alternate periods of sitting and standing, she is not functionally capable of either the prolonged sitting of sedentary work or the prolonged standing or walking of light work. *Id.,* SSR 83-12. In those cases, the ALJ should consult with a VE to determine whether the limitation erodes the occupational base. That did not happen here.

Because he found Dr. Rossman's August 2018 opinion supported by her medical records and consistent with the record as a whole, and because he did not explain that evidence supported a finding contrary to the August 2018 opinion, the ALJ did not state good cause for discounting this opinion.

## V.   Conclusion

Based on the foregoing, the ALJ's decision is not supported by substantial evidence. Accordingly, this matter will be reversed and remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**DONE** this 26th day of September, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE